UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JUNE VAN SCOYOC,<br><br>    Plaintiff,<br><br>-v-<br><br>CITY OF BELLEAIR BEACH, DAN GUNN, personally and in his official capacity as vice mayor of Belleair Beach, COUNCILWOMAN JODY SHIRLEY, personally and in her official capacity as Belleair Beach council member, COUNCILWOMAN RITA SWOPE, personally and in her official capacity as Belleair Beach council member, TOWN OF BELLEAIR SHORE, BARBARA COLLUCI, personally and in her official capacity as Belleair Shore town clerk, STEVE MARSH, KEITH MACARI, and NICK DI CEGLIE, dba PINELLAS COUNTY REPUBLICAN EXECUTIVE COMMITTEE AND/OR PINELLAS COUNTY REPUBLICAN PARTY,<br><br>    Defendants. | CASE NO.: 8:21-cv-1490 |

**COMPLAINT FOR DAMAGES AND FOR
INJUNCTIVE AND DECLARATORY RELIEF
AND JURY DEMAND**

**COME NOW** the Plaintiff, JUNE VAN SCOYOC, (hereinafter, the "Plaintiff"), by and through her undersigned counsel, and hereby sues the Defendants, CITY OF BELLEAIR BEACH, DAN GUNN, personally and in his official capacity

as vice mayor of Belleair Beach, COUNCILWOMAN JODY SHIRLEY, personally and in her official capacity as Belleair Beach council member, COUNCILWOMAN RITA SWOPE, personally and in her official capacity as Belleair Beach council member, TOWN OF BELLEAIR SHORE, BARBARA COLLUCI, personally and in her official capacity as Belleair Shore town clerk, STEVE MARSH, KEITH MACARI, and NICK DI CEGLIE, dba PINELLAS COUNTY REPUBLICAN EXECUTIVE COMMITTEE AND/OR PINELLAS COUNTY REPUBLICAN PARTY (hereinafter collectively, the "Defendants"), and avers as follows:

## NATURE OF THE ACTION

1. This case seeks to protect and vindicate fundamental constitutional rights. It is a civil rights action brought under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985, with respect to Defendants' retaliation and restriction on Plaintiff's right to freedom of speech, and other related issues.

2. Plaintiff seeks a declaration that Defendants violated her clearly established constitutional rights, pursuant to the U.S. Constitution and 42 U.S.C. § 1983, as set forth in this Complaint; a preliminary and permanent injunction enjoining the Defendants' conspiratorial campaign of defamation and libel against the Plaintiff during and following the pendency of this suit; for damages stemming from the conspiracy to deny the Plaintiff her First Amendment rights and for the retaliation taken by the conspirators against the Plaintiff; and for any other damages for the past loss of Plaintiff's constitutional rights.

3. The Defendants who committed these unlawful violations of Plaintiff's constitutional and state rights did so under color of state authority in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiff's civil rights.

4. Plaintiff seeks relief, including declaratory and injunctive relief, compensatory damages, punitive damages, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988.

**PARTIES**

5. Plaintiff, June Van Scoyoc, is a natural person and at all times relevant to this complaint resided in Belleair Beach, Pinellas County, Florida.

6. Defendant City of Belleair Beach (hereinafter, "BB City") is a political subdivision of the State of Florida with the capacity to sue and be sued.

7. Defendant Town of Belleair Shore (hereinafter, "BS Town") is a political subdivision of the State of Florida with the capacity to sue and be sued.

8. Upon information and belief, Defendant Dan Gunn (hereinafter, "Gunn") is a natural person and at all times relevant to this complaint resided in Belleair Beach, Pinellas County, Florida, and was vice mayor of Belleair Beach.

9. Upon information and belief, Defendant Councilwoman Jody Shirley (hereinafter, "Shirley") is a natural person and at all times relevant to this complaint resided in Belleair Beach, Pinellas County, Florida, and was a member of the BB City Council.

10. Upon information and belief, Defendant Councilwoman Rita Swope

(hereinafter, "Swope") is a natural person and at all times relevant to this complaint resided in Belleair Beach, Pinellas County, Florida, and was a member of the BB City Council.

11. Upon information and belief, Defendant Barbara Colluci (hereinafter, "Colluci") is a natural person and at all times relevant to this complaint resided in Belleair Shore, Pinellas County, Florida, and was the town clerk of BS Town.

12. Upon information and belief, Defendant Steve Marsh (hereinafter, "Marsh") is a natural person and at all times relevant to this complaint resided in Belleair Beach, Pinellas County, Florida.

13. Upon information and belief, Defendant Keith Macari (hereinafter, "Macari") is a natural person and at all times relevant to this complaint resided in Belleair Beach, Pinellas County, Florida.

14. Upon information and belief, Defendant Nick Di Ceglie, dba Pinellas County Republican Executive Committee and/or Pinellas County Republican Party (hereinafter, the "Pinellas GOP"), is a natural person using a fictitious name representing a political party, and at all times relevant to this complaint resided in Clearwater, Pinellas County, Florida.

15. Local governments are "persons" that can be sued under 42 U.S.C.S. § 1983. Section 1983 provides a fault-based analysis for imposing municipal liability; therefore, plaintiffs must establish that the city was the person who caused them to be subjected to their deprivation. It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

## VENUE AND JURISDICTION

16. Plaintiff's claims for relief are predicated, in part, on the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1988, which authorizes injunctive relief and the award of attorneys' fees and costs to a prevailing plaintiff in actions brought pursuant to 42 U.S.C. 1983.

17. Plaintiffs also seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiffs seek preliminary and permanent injunctive relief pursuant to Rule 65, Federal Rules of Civil Procedure. This Court has jurisdiction pursuant to 42 U.S.C. § 12101 et. seq. because the instant case arises under federal law, specifically under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, and under the First and Fourteenth Amendments to the United States Constitution.

18. Also, the Court has subject matter jurisdiction pursuant to 28 C.S.C. § 1331 for civil actions arising under the laws of the United States; and for actions under laws providing for the protection of civil rights as per 28 U.S.C. § 1343.

19. On this matter, the Court has supplemental jurisdiction over claims based in Florida State Law as stated in 28 U.S.C. § 1367.

20. Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) as the Middle District of Florida is the judicial district in which a substantial portion of the events or omissions giving rise to the claims alleged herein occurred.

21. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all triable matters of the instant case.

## GENERAL ALLEGATIONS

22. Prior to the events of this lawsuit, the Plaintiff was Chairperson of the BB Parks and Recreation Board.

23. At a BS Commission Meeting on June 16, 2020, and acting solely as a private citizen, the Plaintiff exercised her First Amendment rights to criticize the behavior of Colluci with respect to Colluci's actions taken in an official capacity as the town clerk of BS Town.

24. Colucci then conspired with Councilwomen Shirley and Swope, and Gunn (hereinafter, the "Conspiracy"), to remove the Plaintiff from her position as Chairperson of the Belleair Beach Parks and Recreation Board through their powers as council members, in retaliation for the Plaintiff speaking against Colucci.

25. At some point thereafter, Marsh and Pinellas GOP also joined the Conspiracy.

26. Additionally, Defendants Shirley, Swope, Colluci, Marsh, and Gunn made comments that were false and intentionally defamatory in nature, both in speech communicated to third parties and in paper communications.

27. Furthermore, the decision to remove the Plaintiff from her position was not conducted by neutral decisionmakers, given the personal relationships between Shirley, Swope, Colluci, Marsh, and Gunn, and these decisions were retaliatory in nature.

28. In August of 2020, the Plaintiff, through her undersigned attorney, served notices of intent to sue (hereinafter, the "Notices") to all of the relevant Defendants, pursuant to Florida Statute § 768.28. (*See, ex.*, attached hereto as **Exhibit "A"**).

29. Shortly thereafter, the retaliation against the Plaintiff significantly ramped up.

30. On or around September 4, 2020, the Conspiracy orchestrated a letter campaign (hereinafter, the "Letter Campaign") whereby the entire city of BB received anonymous letters containing the Notices and a pink sticker on the reverse of the envelope, stating:

> Belleair Beach Residents. You will never believe what our current Mayor and his Significant Other are doing now. You must read about the Law Suit filed against the City and Others!

(attached hereto as **Exhibit "B"**).

31. The clear purpose of the Letter Campaign was to make BB residents believe that they were personally being sued by the Plaintiff. The Conspiracy spread this falsehood through postings by third parties on social media, whereupon it was intimated that individual BB residents would be financially liable for the damages of the instant lawsuit.

32. On information and belief, the Letter Campaign employed the resources of the Pinellas GOP in printing and mailing the letters to the residents.

33. In fact, shortly after the Letter Campaign began, the undersigned law firm, Lento Law Group, began receiving a deluge of harassing phone calls, emails, and letters from angry BB residents, riled up by, and acting on behalf of, the

Conspiracy. (*See, ex.*, attached hereto as **Exhibit "C"**).

34. On information and belief, the Conspiracy urged a variety of third parties to harass the Plaintiff and the undersigned law firm in various social media platforms, such as NextDoor. (*See, ex.*, attached hereto as **Exhibit "D"**; noting that this is believed to be Conspiracy member Keith Macari acting under an alias).

35. The Conspiracy then employed the Pinellas GOP to stage political rallies urging people to honk their horns to show support for law enforcement. While this may initially seem unrelated, the Pinellas GOP rallies were always held directly in front of the Plaintiff's residence (in a residential area, and not generally in a good place for a legitimate rally), often in her driveway, and usually begun early in the morning, with the clear intent of causing harm to the Plaintiff by disturbing her by making cars honk their horns while passing her residence, particularly on early weekend mornings. (The Plaintiff has numerous videos of these "protests" that will be entered into evidence.)

36. At these "rallies", numerous individuals were urged to take up positions in close proximity to the Plaintiff's home and cause loud and repeated harassment of the Plaintiff for a period of approximately 144 days.

37. The Conspiracy's harassment of the Plaintiff continues in a wide variety of social media platforms to this day.

**COUNT I: 42 U.S.C. § 1983**
**(First Amendment - Retaliation)**

The Plaintiff sues Defendants and alleges:

38. Plaintiff incorporates paragraphs 1 through 37 as if fully set forth herein.

39. Even where a government entity may terminate an employee or other person serving at the pleasure of the entity for no reason at all, the First Amendment generally prohibits government officials from dismissing or demoting a person because of the person's engagement in constitutionally protected political activity. *See,* Heffernan v. City of Paterson, N.J., 136 S. Ct. 1412, 1416 (2016).

40. Public employees do not surrender all their First Amendment rights by reason of their employment; rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. *See,* Garcetti v. Ceballos, 126 S. Ct. 1951 (2006).

41. An elected city official who is entitled to hold an office under state law has a property interest in their office which can be taken from them only by procedures meeting the requirements of due process. Crowe v. Lucas, 595 F.2d 985, 993 (5th Cir. 1979) (*citing* Gordon v. Leatherman, 450 F.2d 562, 565 (5th Cir. 1971) (interpreting Florida law)).

42. The Defendants have repeatedly stated that the Plaintiff was not terminated for any reason relating to her performance with the BB Parks and Recreation Board, which they admitted in public has been exceptional.

43. The Plaintiff's speech was regarding a matter of public concern and was not doing so in her capacity as a member of the BB Parks and Recreation Board.

44. Furthermore, the Plaintiff's speech was not even made on or *to* the BB City Council and should have been of no concern to the BB City Council.

45. Here, Defendants violated the provisions of 42 U.S.C. § 1983, in that Defendants, acting under color of State law, deprived the Plaintiff of the privileges and immunities secured to her by the First and Fourteenth Amendments of the United States Constitution and, in particular, her right to hold public office without infringement of her First Amendment right to freedom of speech.

46. Defendants intentionally, willfully, recklessly, and with actual malice removed Plaintiff from her position on the BB Parks and Recreation Board in order to deny Plaintiff her First Amendment right to free speech.

47. Defendants' actions were to penalize and retaliate against Plaintiff for her exercise of fundamental First Amendment rights.

48. To state a retaliation claim, a plaintiff must establish: (1) "[her] speech or act was constitutionally protected;" (2) "the defendant's retaliatory conduct adversely affected the protected speech;" and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005) (citations omitted); see also Abella v. Simon, 522 F. App'x 872, 873 (11th Cir. 2013). A plaintiff's "claim depends not on the denial of a constitutional right, but on the harassment [ … ] received for exercising [her] rights." Bennett, 423 F.3d at 1253.

49. Regarding the first prong, the First Amendment "protects the rights of [free] speech and to petition for redress." Abella, 522 F. App'x at 873 (citing U.S. Const. amend. I; United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n, 389 U.S. 217, 222, 88 S. Ct. 353, 19 L. Ed. 2d 426 (1967)).

50. As to the second prong, a "plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett, 423 F.3d at 1254 (finding retaliatory acts, including "a prolonged and organized campaign of harassment by local police officers[,]" where defendants repeatedly followed, pulled over, cited and intimidated plaintiffs, as well as allegedly attempted to obtain arrest warrants against plaintiffs without probable cause and disseminated flyers depicting plaintiffs as criminals).

51. In applying the objective test of ordinary firmness, courts liberally construe whether the alleged conduct had an adverse effect, so while "[t]he effect on freedom of speech may be small, . . . there is no justification for harassing people for exercising their constitutional rights." Bennett, 423 F.3d at 1254 (alteration in original) (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)). The adverse effect "need not be great in order to be actionable." Id.; see also Garcia v. City of Trenton, 348 F.3d 726, 729 (8th Cir. 2003) (explaining that the retaliatory issuance of parking tickets totaling a mere $35 in less than two months to punish plaintiff for speaking out would be sufficient to chill the speech of a person of ordinary firmness).

52. Regarding the third prong, to establish a causal connection, a plaintiff must show their protected conduct was a motivating factor behind the alleged retaliatory misconduct. See Bennett, 423 F.3d at 1250.

53. Plaintiff must identify a sequence of events from which "a retaliatory motive can be inferred[,]" notwithstanding other non-retaliatory motives the defendant

may harbor. Lippman v. City of Miami, 719 F. Supp. 2d 1370, 1374 (S.D. Fla. 2010) (footnote call number omitted); *see also* Id., at n.4.

54. To determine if the protected conduct is a motivating factor, courts rely on the burden-shifting formula set forth in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977); *see also* Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008) (resolving the "subjective motivation issue" pursuant to Mt. Healthy). Under the Mt. Healthy formula,

> [o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail . . . on summary judgment.

Smith, 532 F.3d at 1278 (alterations added; footnote call number omitted) (*quoting* Thaddeus-X v. Blatter, 175 F.3d 378, 399 (6th Cir. 1999) (*citing* Mt. Healthy, 429 U.S. at 287)).

55. In conjunction with the burden-shifting formula, courts also consider the temporal proximity between a plaintiff's exercise of free speech and the adverse effect in gauging the causal connection. *See*, Ranize v. Town of Lady Lake, Fla., No. 5:11—cv— 646—Oc—32TBS, 2012 U.S. Dist. LEXIS 147306, 2012 WL 4856749, at *3 (M.D. Fla. Oct. 12, 2012).

WHEREFORE, Plaintiff June Van Scoyoc requests that this Court:

(1) Enter a declaratory judgment that Defendants' retaliatory acts complained of herein have violated and continue to violate the

rights of the Plaintiff as secured by the United States Constitution;

(2) Enjoin Defendants from continuing their retaliatory practices;

(3) Award Plaintiff compensatory damages including but not limited to: pain, suffering, loss of life's pleasures, loss of reputation, emotional distress and other damages;

(4) Award reasonable costs and attorney's fees;

(5) Award punitive damages; and

(6) Grant any other relief this Court deems just and proper under the circumstances.

## COUNT II: 42 U.S.C. § 1983
## (Fourteenth Amendment – Equal Protection)

The Plaintiff sues Defendants, and alleges:

56. Plaintiff incorporates paragraphs 1 through 37 as if fully set forth herein.

57. Plaintiff was an appointed official for the city of BB. Her removal, without regards to the merits of her performance of the position, violates her rights under the equal protection clause of the 14th amendment.

58. Further, Plaintiff is exempt from having to find a similarly situated individual because the animus of the City Counsels actions, personally as well as in their official capacity, is demonstrative on its face.

59. The Equal Protection Clause provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.

60. In <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000), the Supreme Court explained, "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." <u>Id.</u> (internal quotation marks and citations omitted). As a result, the Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Id.</u> (citations omitted) (recognizing plaintiff's class of one equal protection claim where the defendant village demanded a thirty-three-foot easement to connect plaintiff's property to the municipal water supply, when the village required only a fifteen-foot easement for other property owners).

61. As the Eleventh Circuit has emphasized, "[t]o prove a 'class of one' claim, the plaintiff must show (1) that she was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral [regulation] for the purpose of discriminating against her." <u>Leib v. Hillsborough Cnty. Pub. Transp. Com'n</u>, 558 F.3d 1301, 1307 (11th Cir. 2009) (citation omitted).

62. Class of one equal protection claims generally require plaintiffs to identify comparators in the pleading in order to show intentional, discriminatory treatment different from others similarly situated. *See generally* <u>Olech</u>, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060; <u>Campbell v. Rainbow City</u>, 434 F.3d 1306 (11th

Cir. 2006); Glover v. Mabrey, 384 F. App'x 763 (10th Cir. 2010).

63. Indeed, "in the context of 'class of one' claims," "the 'similarly situated' requirement must be rigorously applied." Leib, 558 F.3d at 1307 (citing Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1275 (11th Cir. 2008); Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1207 (11th Cir. 2007)).

64. The purpose of the similarly situated requirement is to avoid "subject[ing] nearly all state regulatory decisions to constitutional review in federal court and deny[ing] state regulators the critical discretion they need to effectively perform their duties." Leib, 558 F.3d at 1307 (alteration added) (*quoting* Griffin, 496 F.3d at 1203).

65. And "[e]ven in run-of-the-mill discrimination cases, [the Eleventh Circuit has] emphasized that plaintiffs are not permitted simply to rely on broad generalities in identifying a comparator.'" Id. (alteration added) (*quoting* Griffin, 496 F.3d at 1204 (analyzing whether comparators were "prima facie identical in all relevant respects" (citation omitted))).

66. The Seventh Circuit, writing extensively on class of one equal protection issues, has developed an exception to the traditional requirement that plaintiffs must identify comparators to state a claim. See Swanson v. City of Chetek, 719 F.3d 780, 784 (7th Cir. 2013). The Seventh Circuit recognizes class of one claims in cases where illegitimate governmental conduct or "animus is easily demonstrated[,] but similarly situated individuals are difficult to find." Id. "If animus is readily obvious" based on treatment received by plaintiff, they do not need to show unequal treatment by comparison to others similarly situated. Id. (finding the defendant's animus was

"readily obvious" from the fact that the defendant "bore [the plaintiffs] ill will, caused an investigation against [one plaintiff], interrupted meetings of the plaintiffs and building inspectors and angrily informed building inspectors that no permit should be granted"); see also <u>Fenje v. Feld</u>, 398 F.3d 620, 628 (7th Cir. 2005) (recognizing a "campaign of official harassment" driven by "malice, vindictiveness, or malignant animosity would state a claim for relief under the Equal Protection Clause") (internal quotation marks and citations omitted); *see also,* <u>Geinosky v. City of Chicago</u>, 675 F.3d 743 (7th Cir. 2012).

WHEREFORE, Plaintiff June Van Scoyoc requests that this Court:

(1) Award Plaintiff compensatory damages including but not limited to: pain, suffering, loss of life's pleasures, loss of reputation, emotional distress and other damages;

(2) Award reasonable costs and attorney's fees;

(3) Award punitive damages; and

(4) Grant any other relief this Court deems just and proper under the circumstances.

### COUNT III: Civil Conspiracy
### (Florida State - Civil Conspiracy)

The Plaintiff sues Defendants, and alleges:

67. Plaintiff incorporates paragraphs 1 through 37 as if fully set forth herein.

68. A civil conspiracy exists and/or existed between the Defendants.

69. The civil conspiracy exists and/or existed to do unlawful acts by unlawful

means, including those aforestated herein to penalize and punish the Plaintiff for protected speech, as described in Counts I & II.

70. Additionally, "harassment" is "a course of conduct directed at a specific person that causes substantial emotional distress ... and serves no legitimate purpose." § 784.048(1)(a), Fla. Stat., and "cyberstalking" entails harassment by means of electronic communications. See § 784.048(1)(d), Fla. Stat. (2009).

71. The Defendants have also engaged in harassment and cyberstalking of the Plaintiff, as detailed previously herein.

72. The Plaintiff has suffered substantial emotional distress as a result of the various campaigns and "protests" aimed to deter her from pursuing this lawsuit.

73. Each Defendant has completed at least one overt act in pursuance of the conspiracy.

74. Damage has resulted to the Plaintiff as a result of the acts performed pursuant to the conspiracy.

75. Notably, there is no requirement that each co-conspirator commit acts in furtherance of the conspiracy; it is sufficient if each conspirator knows of the scheme and assists in some way. Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008).

76. In most situations, an entity cannot conspire with its officers, employees, and agents, but under the "personal stake" doctrine, an entity conspiring with its own

agents can be held liable where its "agent has a personal stake in the activities that are separate and distinct from the corporation's interest." Cedar Hills Properties Corp. v. E. Fed. Corp., 575 So. 2d 673, 676 (Fla. 1st DCA 1991); *see also,* Weisman v. S. Wine & Spirits of Am., Inc., 297 So. 3d 646, 652 (Fla. 4th DCA 2020), review denied, SC20-1116, 2020 WL 6391277 (Fla. Nov. 2, 2020).

77.     An alternative basis for a civil conspiracy claim is allowed where the plaintiff can show some "peculiar power of coercion" that the conspirators had by virtue of their combination, which an individual acting alone would not possess. *See,* Churruca v. Miami Jai-Alai, Inc., 353 So.2d 547 (Fla.1977) (jai-alai players stated claim for conspiracy against jai-alai fronton owners who allegedly conspired to prevent players from getting jobs in arenas after a players' strike).

78.     Importantly, when a party sues a co-conspirator for conspiracy, the co-conspirator may be held accountable for the full amount of the damages caused, regardless of whether he committed the underlying tort or just conspired with another to commit the underlying tort. This is very noteworthy where the co-conspirator is collectable if a judgment is issued, but the party who perpetrated the underlying tort is not collectable.

WHEREFORE, Plaintiff June Van Scoyoc requests that this Court:

(1)     Award Plaintiff compensatory damages including but not limited to: pain, suffering, loss of life's pleasures, loss of reputation, emotional distress and other damages;

    (2)    Award reasonable costs and attorney's fees;

    (3)    Award punitive damages; and

    (4)    Grant any other relief this Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted,

*/s/ Rook Ringer*

Dated:     06/21/2021

ROOK ELIZABETH RINGER, ESQ.
Florida Bar No. 1015698
**LENTO LAW GROUP, P.A.**
222 San Marco Ave., Ste. "C"
St. Augustine, FL 32084
904.602.9400 x 467 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
*Attorney for Plaintiff*