UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**JUNE VAN SCOYOC,**

     **Plaintiff,**

**v.**                              **Case No: 8:21-cv-1490-MSS-JSS**

**CITY OF BELLEAIR BEACH, et al,**

     **Defendants.**

_____

## ORDER

**THIS CAUSE** comes before the Court for consideration of the Individual Defendants' Dispositive Motion to Dismiss the Third Amended Complaint or, in the Alternative, Motion for Summary Judgment, (Dkt. 112), Plaintiff's response thereto, (Dkt. 127), Defendant City of Belleair Beach's Dispositive Motion for Summary Judgment, (Dkt. 145), Plaintiff's response thereto, (Dkt. 154), Defendant City of Belleair Beach's Reply, (Dkt. 155), Defendant City of Belleair Beach's Notice Concerning Stipulation of Agreed Material Facts, (Dkt. 160), the Individual Defendants' Motion for Summary Judgment, (Dkt. 163), Plaintiff's response in opposition thereto, (Dkt. 164), Plaintiff's Motion for Partial Summary Judgment, (Dkt. 165), and Defendants' response in opposition thereto. (Dkt. 167)

For reasons that follow, the Court finds that the Individual Defendants' Motions are due to be **GRANTED**, Defendant City's Motion is due to be **GRANTED** and Plaintiff's Motion is due to be **DENIED**.

I.    **BACKGROUND**

a. **Procedural Background**

On June 21, 2021, Plaintiff June Van Scoyoc initiated this action under 42 U.S.C. § 1983 against Defendant City of Belleair Beach (hereinafter, "Defendant City" or "Belleair Beach") as well as Defendants Vice Mayor Glenn Gunn, Councilwoman Jody Shirley, former Councilwoman Rita Swope, and Mayor Michael David Gattis (collectively, the "Individual Defendants"). (Dkt. 1) In the operative Third Amended Complaint (the "Complaint"), Plaintiff alleges that Defendant City and each of the Individual Defendants violated the First and Fourteenth Amendments of the United States Constitution. (Dkt. 101) Plaintiff seeks a declaratory judgment that Defendant City and each of the Individual Defendants retaliated against Plaintiff in violation of the First and Fourteenth Amendments when the Belleair Beach City Council (the "City Council") removed Plaintiff from her position on Belleair Beach's Park and Recreation Board (the "Park Board"). (Id. at 14; see id. at 15) Plaintiff also seeks an injunction prohibiting Defendant City and each of the Individual Defendants from "continuing their retaliatory practices." (Id. at 14; see id. at 16)

The Individual Defendants moved to dismiss the Third Amended Complaint on qualified immunity grounds, and requested the Court treat the motion as one for summary judgment. (Dkt. 112) Subsequently, the Individual Defendants moved for summary judgment. (Dkt. 163) In the Motion for Summary Judgment, the Individual Defendants again raised qualified immunity as a defense to Plaintiff's claims and also contend Plaintiff's removal from the Park Board was not retaliatory. (Id.) Plaintiff

2

moves for partial summary judgment on her claims that the Individual Defendants violated the First and Fourteenth Amendments. (Dkt. 165 at 59) In her motion, Plaintiff contends the Individual Defendants violated a clearly established right. (Id. at 6)

Defendant City moved for summary judgment on Plaintiff's claims. (Dkt. 145) Specifically, the City contended Plaintiff's speech was not entitled to First Amendment protection as a matter of law. (Id.) Plaintiff moved for partial summary judgment on her claims that Defendant City violated the First and Fourteenth Amendments. (Dkt. 165 at 59) In her motion, Plaintiff stated, "City had no right to dictate what Plaintiff said in her (private capacity) as a citizen of the United States, and therefore they violated Plaintiff's protected rights of free speech[.]" (Id. at 48)

### b. Undisputed Facts

The following facts are undisputed in this record for the purpose of resolving the motions. In May 2019, the City Council appointed Plaintiff to a volunteer, unpaid position on the Park Board. (Dkt. 160-9 at ¶ 10) Plaintiff later became the chairperson of the Park Board. (Id.) By virtue of this position, Plaintiff was subject to Florida's public records laws until her removal from the position in July 2020. (Id. at ¶¶ 18, 21)

Meanwhile, Plaintiff and Joseph Manzo, who was the Mayor of Belleair Beach "at all times material," lived together and referred to themselves as "life partners." (Id. at ¶¶ 4, 5) Plaintiff assisted Mayor Manzo with his mayoral duties. (Id. at ¶ 12) She created and used an email account, juneformayorm@gmail.com, for this purpose. (Id.) Defendant City did not appoint or hire Plaintiff to perform secretarial or administrative

3

duties for the Mayor. (Id. at ¶ 11) Nonetheless, Plaintiff identified herself as the mayor's assistant in emails to members of Belleair Beach staff as well as third parties with whom she interacted regarding city business. (Dkt. 113-5 at 26–51) Additionally, Plaintiff identified herself as the mayor's assistant on a local radio show, the Kelly Kelly Show, which also broadcasts live on Facebook. (Dkt. 160-9 at ¶ 15; Dkts. 136, 141)

The Town of Belleair Shore ("Belleair Shore") abuts Belleair Beach to the west. (Dkt. 160-9 at ¶ 7) Belleair Shore employed Barbara Colucci as its Town Clerk "at all times material." (Id. at ¶ 8) On November 4, 2019, a verbal altercation involving Plaintiff, Mayor Manzo, and Rick Colucci, Barbara Colucci's husband, occurred in the parking lot of Belleair Beach City Hall after a meeting of the City Council. (Id. at ¶¶ 9, 16)

On November 8, 2019, four days after the altercation, Defendant City received an anonymous public records request. (Id. at ¶ 17) It sought Plaintiff's telephone records for a five-hour period on September 10, 2019 (the "November 8 public records request"). (Id.) Patricia Gentry, the Belleair Beach City Clerk, forwarded this request to Plaintiff the day it was received. (Dkt. 146-1 at 248) From November 2019 until March 2020, Plaintiff declined to produce records for which Defendant City received at least four requests despite attempts by representatives of Defendant City to persuade Plaintiff to cooperate. (Dkt. 146-1) Plaintiff maintained she did not conduct any city business on September 10, so there were no records to produce, and she characterized the requests as "harassment." (Id. at 252, 257)

4

On June 8, 2020, Defendant City received an email from Barbara Colucci. (Dkt. 160-9 at ¶ 19) In the email, Barbara Colucci states that she submitted the several public records requests. (Dkt. 113-5 at 17) In this email, Colucci alleges her boss, the Belleair Shore mayor, received a call on September 10, 2019 from someone who identified herself as the assistant to the mayor of Belleair Beach. (Id.) This caller, according to Colucci, disparaged Colucci to her boss. (Id.) Colucci further states that the next time she and her husband attended a Belleair Beach City Council meeting, the altercation in the parking lot ensued. (Id. at 18) Colucci concluded the email to the City Council by requesting they provide the records of Plaintiff's communications on September 10, 2019. (Id. at 19)

About a week later, on June 16, 2020, Plaintiff read a speech to the Belleair Shore Town Commission. (Dkt. 160-9 at ¶ 20) Plaintiff delivered a copy of the speech to the Belleair Beach City Council. (Id.) Plaintiff began her speech by explaining that she is the chairperson of the Park Board, the life partner of Mayor Manzo, and she was speaking "strictly on [her] own behalf." (Id.) Plaintiff then stated that in a letter Barbara Colucci sent to the City Council, Barbara Colucci "accuses [Plaintiff] of violating the public records law." (Id.) Plaintiff stated, "[Barbara Colucci's] interpretation of the Florida Public Records Law is incorrect." (Id.) Plaintiff further stated, "[Y]our town clerk makes defamatory accusations about [Mayor Manzo]; she also makes false accusations about me[.]" She concluded,

> It would be a crying shame if one person is permitted to sour the excellent relationship between the [Mayors of Belleair Beach and Belleair Shores] and the cities . . . . I respectfully ask that this Mayor and town Commission renounce

views expressed by Ms. Colucci and take whatever steps you deem necessary to assure that such communication is never again associated with your fine Town.

(Id. at 23)

At a City Council meeting on July 6, 2020, the City Council voted to remove Plaintiff from her position on the Park Board. (Dkt. 160-9 at ¶ 21) The Individual Defendants—Vice Mayor Glenn Gunn and then-Councilmembers Jody Shirley, Rita Swope, and David Gattis—voted in favor of Plaintiff's removal. In an affidavit, Vice Mayor Gunn stated his reasons for voting for Plaintiff's removal included the disruption caused by Plaintiff's representation of herself as the Mayor's assistant and her personal conflict with Colucci. (Dkt. 113-1 at 4) Likewise, Councilmember Shirley stated in an affidavit she voted for Plaintiff's removal because she believed that the way Plaintiff handled the conflict with Colucci reflected poorly on the City and Plaintiff's ability to navigate situations in a professional manner. (Dkt. 113-2 at 4) Councilmember Shirley stated she was concerned that City Council business would continue to be disrupted by the women's conflict and that the City's resources would be expended in furtherance of a personal grievance. (Id.) In her affidavit, Councilmember Swope stated she voted for Plaintiff's removal because Plaintiff "repeatedly represented herself as the assistant to the Mayor," and Plaintiff's ongoing conflict with Colucci would continue to cause disruption and "cause the City's reputation and professionalism to be damaged." (Dkt. 113-3 at 3–4) Finally, Councilmember Gattis stated in an affidavit he voted for Plaintiff's removal because he believed she was a poor and ineffective communicator and her relationship with

6

Mayor Manzo resulted in inefficient and tedious City Council meetings. (Dkt. 113-4 at 2–3) Notably, no one claimed to have terminated Plaintiff based on her exercise of her free speech rights.

Plaintiff, proceeding *pro se*, initiated this action under 42 U.S.C. § 1983 on the grounds that her removal constitutes retaliation by Defendant City and the Individual Defendants in violation of the First and Fourteenth Amendments.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III.   DISCUSSION

The Court must determine whether Plaintiff's claim that her removal from the Park Board violated the First Amendment may be resolved as a matter of law. The Individual Defendants argue they are entitled to qualified immunity for their decision to remove Plaintiff from the Park Board. Additionally, both the Individual Defendants and Defendant City argue Plaintiff's constitutional rights were not violated. (Dkt. 112 at 2; Dkt. 145 at 17) Specifically, Defendants argue that when Plaintiff gave her speech, she spoke as a government employee, so the First Amendment did not protect her speech. (Dkt. 112 at 17–18; Dkt. 145 at 17–19) Plaintiff, on the other hand, argues that she made her speech in her private capacity as a citizen. For this reason, she believes her speech was entitled to First Amendment protection. (Dkt. 165 at 48) In the

8

alternative, Defendants argue that if Plaintiff's speech was protected, her interest in speaking did not outweigh the City Council's interest in promoting the efficiency of the services it provides. (Dkt. 112 at 18–21; Dkt. 145 at 19–23) Finally, Defendants argue Plaintiff's speech did not play a substantial or motivating role in Plaintiff's removal from the Board, and the City Council would have made the same decision even if Plaintiff never made the speech. (Dkt. 112 at 21–23; Dkt. 145 at 23–25)

Section 1983 creates a cause of action against state actors for constitutional rights violations. 42 U.S.C. § 1983. Section 1983 binds municipalities and other local government units as well as individuals acting under color of state law. Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978). A plaintiff may sue a municipality under § 1983 for monetary, declaratory, or injunctive relief where the plaintiff alleges an action is unconstitutional and "executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." Id. Section 1983 "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." Id. at 692. Accordingly, to satisfy the elements of a § 1983 against a municipality, a plaintiff must show: (1) her constitutional rights have been violated; (2) the violation occurred under color of state law; and (3) a policy, ordinance, or official decision caused the violation. See id.

The Court finds Defendants are entitled to summary judgment on the issue of whether they violated Plaintiff's constitutional rights. The First Amendment states, "Congress shall make no laws . . . abridging the freedom of speech . . . ." U.S. Const.

9

Amend. I. This restriction applies to the states via the Fourteenth Amendment. McKinley v. Kaplan, 262 F.3d 1146, 1149 n.1 (11th Cir. 2001). "The Amendment protects 'not only the affirmative right to speak, but also the right to be free from retaliation . . . for the exercise of that right.'" DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1288 (11th Cir. 2019) (citation omitted). Although Plaintiff was an unpaid volunteer for Defendant City in her position on the Park Board, in a similar case, for purposes of evaluating a dispositive motion on the plaintiff's First Amendment retaliation claims, the Eleventh Circuit placed an "unpaid political appointee [to a public advisory board] on equal footing with traditional public employees." McKinley, 262 F.3d at 1149 n.5; see also Jarrard v. Moats, No. 4:20-cv-2, 2022 WL 18586257, at *7–8 (N.D. Ga. Sept. 27, 2022) (treating a volunteer jail minister as a government employee to evaluate his First Amendment retaliation claims).

Implicit in the Eleventh Circuit's decision in McKinley to treat the unpaid political appointee as an employee for purposes of its First Amendment analysis is the principle that, if the appointee were not an employee, her removal from the advisory board would not constitute a deprivation of any cognizable right. 262 F.3d at 1149 n.5. Indeed, the court stated: "For purposes of our analysis today, we treat Appellant as if she were a salaried employee of the County, thus placing her in the **strongest possible position**." Id. (emphasis added). To the same effect, the Supreme Court stated in Thorpe v. Housing Authority of the City of Durham, "The recipient of a government benefit, be it a tax exemption, unemployment compensation, **public employment**, a license to practice law, or a home in a public housing project, cannot be made to forfeit

the benefit because he exercises a constitutional right." 386 U.S. 670, 678–79 (1967) (Douglas, J., concurring) (citations omitted) (emphasis added); see Barton v. Clancy, 632 F.3d 9, 23–26 (1st Cir. 2011) ("In sum, the Second, Seventh, and Ninth Circuits have found that volunteer positions are entitled to constitutional protection; however, these cases have relied . . . on state statutes which mandate that such volunteers be treated as employees. The Tenth Circuit, albeit in dicta, has concluded that volunteers enjoy First Amendment protection without reliance on any such state statute. The Third Circuit, like this circuit, has assumed without deciding that a public volunteer position is a valuable government benefit, the deprivation of which can trigger First Amendment scrutiny. [N]o court has held that volunteers are not protected by the First Amendment."). Based on the foregoing, this Court follows the Eleventh Circuit guidance and assumes for the sake of this order that Plaintiff should be treated like a traditional public employee entitled to protection against adverse employment actions in retaliation for protected speech.

Here, Plaintiff argues Defendants deprived her of the opportunity to volunteer as a member of the Park Board in retaliation for her speech. Assuming, without deciding, that the deprivation of the opportunity to volunteer for a city government is a government benefit, the government benefit of which Plaintiff was deprived is best analogized to public employment. And courts have reasoned that the government may deprive a person of public employment because of his or her speech without violating the Constitution if certain elements are present, as will be discussed *infra*.

11

In this regard, "[a] state may not demote or discharge a public employee in retaliation for protected speech." Morgan v. Ford, 6 F.3d 750, 753–54 (11th Cir. 1993) (citations omitted). The Eleventh Circuit uses a four-part test to determine whether a public employer unconstitutionally removed a public employee in retaliation for exercising free speech rights. Morris v. Crow, 117 F.3d 449, 456 (11th Cir. 1997). First, a court must determine whether the employee spoke as a citizen on a matter of public concern. Id. (citations omitted). This is a question of law "designed to determine whether the employee's speech is protected by the First Amendment." Beckwith v. Daytona Beach Shores, 58 F.3d 1554, 1564 (11th Cir. 1995).

Generally, the First Amendment protects an employee's speech where the employee speaks as a citizen upon matters of public concern. Connick v. Meyers, 461 U.S. 138, 147 (1983). If instead the employee speaks in her capacity as an employee, or on matters of private interest, her speech is not protected. Alves v. Bd. of Regents of the Univ. Sys. of Ga., 804 F.3d 1149, 1159 (11th Cir. 2015) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). "This threshold inquiry is comprised of two requirements. For her speech to be constitutionally protected, an employee must have spoken (1) as a citizen and (2) on a matter of public concern." Id. at 1160; see also Miceli v. Mehr, No. 17-cv-00029, 2019 WL 5727387, at *18 (D. Conn. Nov. 5, 2019).

### a. Plaintiff spoke as a citizen.

Plaintiff spoke as a citizen, not an employee, when she gave her speech to the Belleair Shore Town Commission. To determine whether an employee spoke as a citizen or as a government employee, the court considers "whether the speech at issue

12

'owes its existence' to the employee's professional responsibilities." Moss v. City of Pembroke Pines, 782 F.3d 613, 618 (11th Cir. 2015) (quoting Garcetti, 547 U.S. at 421). In Warren v. DeSantis, the Eleventh Circuit identified several considerations upon which it has relied to answer this question in prior cases, including "'the employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job.'" 2024 WL 132518, at *12 (11th Cir. 2024) (quoting Alves, 804 F.3d at 1161). In prior cases, the Eleventh Circuit has also considered whether a public employee was "(1) speaking with the objective of advancing official duties; (2) harnessing workplace resources; (3) projecting official authority; (4) heeding official directives; and (5) observing formal workplace hierarchies." Id. (quoting Fernandez v. Sch. Bd. of Miami-Dade Cnty., 898 F.3d 1324, 1332 (11th Cir. 2018)).

Plaintiff spoke to the Belleair Shore Town Commission as a citizen and not a public employee. As an unpaid, volunteer member of the Park Board, Plaintiff was not expected to speak to the Town Commission of Belleair Shore about the performance of its town clerk. Plaintiff's speech did not occur at her workplace; it occurred at the public meeting of Barbara Colucci's employer's representatives. Plaintiff's speech did not concern the subject matter of Plaintiff's position on the Park Board. Rather, it concerned the behavior of Belleair Shore's town clerk and Plaintiff's personal perception that the behavior may affect the relationship between the two towns. Plaintiff did not speak "with the objective of advancing [her] official duties" as a member of the Park Board. Id. The evidence does not establish that Plaintiff, in writing

13

or orally, harnessed workplace resources, heeded official directives, or observed formal workplace hierarchies. Id. Indeed, presumably, if an unpaid volunteer sought to observe formal workplace hierarchies to address an issue with an employee of a neighboring town, the volunteer would not appear at a public meeting of the neighboring town's elected leadership to air her grievances. After considering the balance of these factors, the Court finds that Plaintiff did not speak as an employee when she gave her speech to the Town Commission.

Because the Court finds Plaintiff spoke in her capacity as a citizen, it must determine whether she spoke on a matter of public concern or on matters of merely personal interest. If the former, the First Amendment protects her speech from retaliation. If it is the latter, it does not.

### b.  Plaintiff did not speak on a matter of public concern.

The Court finds Plaintiff did not speak on a matter of public concern. To determine whether speech relates to a matter of public concern, a court must "discern the purpose of the employee's speech" and consider "'the content, form and context of a given statement, as revealed by the whole record.'" Morgan, 6 F.3d at 754 (quoting Deremo v. Watkins, 939 F.2d 908, 910 (11th Cir. 1991) (citations omitted)).

> Factors a court should use in making this determination include: whether the expression relates to "any matter of political, social, or other concern to the community," or merely to "matters only of personal interest";[1] whether the employee attempted to have the subject of his or her expression aired in a public forum;[2] and the motivation of the employee in making the expression[.][3]

---

[1] Connick, 461 U.S. 138, 146, 147 (1983).
[2] Morgan, 6 F.3d at 754; see also Connick, 461 U.S. at 148.
[3] Morgan, 6 F.3d at 754.

Lawrenz v. James, 852 F. Supp. 986, 991 (M.D. Fla. 1994) (citations omitted). The Eleventh Circuit has noted, "An employee's speech will rarely be entirely private or entirely public." Morgan, 6 F.3d at 755. "The mere fact that the subject matter of the expression is one in which the public might have a substantial interest . . . is not dispositive." Lawrenz, 852 F. Supp. at 992; see also Morris, 142 F.3d at 1381. Nor is the consideration of whether the employee attempted to make the expression public dispositive. Morgan, 6 F.3d at 754. The relevant inquiry is whether the purpose of the speech was to raise issues of public concern. Alves, 804 F. 3d at 1167 ("It was only incident to voicing their personal concerns that Appellants' remarks touched upon matters that might potentially affect the student body."); Boyce v. Andrew, 510 F.3d 1333, 1344 (11th Cir. 2007).

Viewing the undisputed facts and evidence in the light most favorable to Plaintiff, this Court finds that Plaintiff spoke to the Belleair Shore Town Commission as a citizen about matters of personal interest. In her speech, Plaintiff explained to the Commission that Barbara Colucci sent a letter to the Belleair Beach City Council in which Colucci accused Plaintiff of violating the Florida public records law. (Dkt. 113-5 at 22) Plaintiff expressed her belief that Colucci's interpretation of the law is incorrect. (Id.) She further informed the Commission that Colucci made "defamatory accusations about the Belleair Beach Mayor," who Plaintiff had identified as her life partner. (Id.) Plaintiff stated, "Ms. Colucci, as a town clerk, knows or should know that the City Council of Belleair Beach has no authority to deal with a public records

request." (Id.) Plaintiff expressed concern that Colucci's actions may "sour the excellent relationship between the [Mayors of Belleair Beach and Belleair Shore] and the cities." (Id. at 23) To conclude, Plaintiff asked the Town Commission to "renounce the views expressed by Ms. Colucci and take whatever steps you deem necessary to assure that such a communication is never again associated with your fine Town." (Id.)

In evaluating whether the speech constituted a matter of public concern, the Court is required to consider "the content, form, and context of [the] statement, as revealed by the whole record." Connick, 461 U.S. at 147–48. When read out of context, it might appear from the speech's content that its purpose was to lodge a formal complaint with the Belleair Shore town clerk's supervisors about her behavior. (Dkt. 113-5 at 22) However, the record shows that Plaintiff's purpose was to avenge Colucci's behavior of sending an email concerning Plaintiff to the Belleair Beach City Council of one week prior.

The ongoing conflict between Plaintiff and Colucci is evident from the undisputed facts in the record. First, the altercation in the Belleair Beach City Hall parking lot involving Plaintiff, Mayor Manzo, and Rick Colucci occurred on November 4, 2019. (Dkt. 160-9 at ¶¶ 9, 16) Then, on November 8, 2019, Defendant City received Colucci's first, anonymous public records request for Plaintiff's communications during the morning of September 10, 2019. (Dkt. 146-1 at 248) From November 2019 until March 2020, Plaintiff declined to produce records for which Defendant City received at least four requests, despite attempts by representatives of

16

Defendant City to persuade Plaintiff to cooperate. (Dkt. 146-1) Plaintiff maintained she did not conduct any city business on September 10, so, she claimed, there were no responsive records to produce, and she characterized the requests as "harassment." (Id. at 252, 257)

Then, on June 8, 2020, Barbara Colucci sent the email to the Belleair Beach City Council in which she alleges her boss received a call on September 10, 2019 from someone who identified herself as the assistant to the mayor of Belleair Beach. (Dkt. 113-5 at 17) This caller, according to Colucci, disparaged Colucci to her boss. (Id.) Colucci concluded the email to the City Council by requesting they provide the records of Plaintiff's communications on September 10, 2019. (Id. at 19) Eight days later, on June 16, 2020, Plaintiff read her speech to the Town Commission. (Dkt. 160-9 at ¶ 20)

Although Plaintiff declared in her speech that Colucci's behavior was of public interest to residents of Belleair Beach and Belleair Shore, the Court finds that Plaintiff's purpose in giving the speech was not to raise a matter of public concern. As explained in Boyce, "A 'public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest[.]'" 510 F.3d at 1344; see also Lawrenz, 852 F. Supp. at 992 ("A court should consider the employee's motive to determine whether the employee was trying to bring such issues to the public's attention or whether the employee was merely concerned with how such issues affected his or her personal interest."). In her deposition, Plaintiff states, "My intent was to try to find out what she—why she was making these—all these requests." (Dkt. 154-4 at 118) Based on this admission by Plaintiff, and the record as a whole, the Court

finds Plaintiff's purpose in making the speech was related overwhelmingly to her personal interest in refusing to produce her cellphone records in response to Colucci's demands.

Upon a review of the whole record in the light most favorable to Plaintiff as the nonmovant on Defendant's motion, the Court finds Plaintiff's speech was a public response to a private and personal dispute.  The Court finds that Plaintiff's motivation was to put a stop to Colucci's records requests and Colucci's disparagement of Plaintiff and her life partner, Mayor Manzo, by persuading Colucci's employers to reprimand Colucci. The conflict between Plaintiff and Colucci came about because both women work for their local governments, but the conflict is not of public concern. Colucci believes Plaintiff disparaged her to her boss, and Plaintiff does not want Colucci to have the phone records which may or may not confirm Plaintiff did so. Colucci embarrassed Plaintiff by detailing their conflict in an email to Plaintiff's supervisors, the City Council. Plaintiff retaliated by giving her speech to the Town Commission, Colucci's supervisors. That the two women are public officials, or that Plaintiff's speech was given in a public forum, does not afford Plaintiff's speech constitutional protection from retaliation. The purpose of Plaintiff's speech relates overwhelmingly to Plaintiff's personal interest in the tiresome back-and-forth between herself and Colucci. Plaintiff's invocation of the public's concern about the health of the two cities' relationship is insufficient to transform her speech into one on matters of genuine public concern.

Accordingly, the Court concludes Plaintiff, ostensibly an employee, spoke as a private citizen on matters of only personal interest. While the First Amendment protects government employees' right to speak as citizens on matters of public concern, it does not protect government employees from repercussions when they speak as citizens on matters of private interest.  Defendants  were free to consider Plaintiff's public speech and to that degree, her conduct, concerning a personal dispute when determining whether Plaintiff remained a proper fit and a fair representation of the City in her capacity in an unpaid position on the Park Board. As such, Defendants are entitled to summary judgment on the question of whether Plaintiff's First and Fourteenth Amendment rights were violated.

The Court acknowledges Plaintiff's position that statements were made by two attorneys, Mayor Manzo, her life partner, and Fred Reilly, the Belleair Beach City Attorney, which suggested Defendants' decision to relieve Plaintiff of her volunteer position on the Park Board could violate Plaintiff's First Amendment rights. (Dkt. 165 at 6) These extempore opinions and assertions do not alter the outcome of this case. To establish a First Amendment violation, certain elements must be shown. As discussed *supra*, the requisite elements are not present in this case. Therefore, Plaintiff does not establish a First Amendment violation.

## IV.   CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. The Individual Defendants' Dispositive Motion to Dismiss the Third Amended Complaint or, in the Alternative, Motion for Summary

Judgment, (Dkt. 112), and the Individual Defendants' Motion for Summary Judgment, (Dkt. 163), are **GRANTED**.

2. Defendant City of Belleair Beach's Dispositive Motion for Summary Judgment, (Dkt. 145), is **GRANTED**.

3. Plaintiff's Motion for Partial Summary Judgment, (Dkt. 165), is **DENIED**.

4. Defendants' Motion to Strike Plaintiff's Response, (Dkt. 166), is **DENIED AS MOOT**.

5. The Clerk is **DIRECTED** to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 30th day of July 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person